UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-60459-ALTMAN

**DAVRONBEK BURIEV**,

    *Petitioner*,

v.

**WARDEN, GEO, BROWARD TRANSITIONAL CENTER** and **GARRETT RIPA**, **FIELD OFFICE DIRECTOR**,

    *Respondents*.

_____/

## ORDER

The Petitioner, Davronbek Buriev, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See* Petition [ECF No. 1]. Buriev, a native of Uzbekistan, challenges his continued pre-removal detention in the custody of Immigration and Customs Enforcement ("ICE"). Among other things, Buriev asks us to "release" him from ICE custody and "compensate" him for his "false imprisonment" and the "violation of [his] civil rights[.]" *Id.* at 8 (cleaned up). The Respondent filed a Response [ECF No. 14]. Buriev has not replied. *See generally* Docket. After careful review, we **DENY** the Petition.

### THE FACTS

Buriev is a native and citizen of Uzbekistan. *See* Record of Inadmissible Alien [ECF No. 14-1] at 4. On November 13, 2024, Buriev entered the United States at (or near) Charlotte Amalie, U.S. Virgin Islands, without inspection, admission, or parole. *See* Declaration of Deportation Officer Vivian A. Delgado ("Delgado Decl.") [ECF No. 14-1] ¶ 4. That day, Buriev appeared at the U.S. Customs and Border Protection ("CBP") Office in St. John, U.S. Virgin Islands, accompanied by Buriev's

cousin and his cousin's husband. *See* Declaration of Shawn G. Brady ("Brady Decl.") [ECF No. 14-1] ¶ 2. Buriev said that he wanted to seek asylum but didn't have any documents issued by the United States. *See ibid.* CBP officials told Buriev that he was neither admitted into the country nor paroled, but they said they couldn't detain him because of "operational constraints[.]" *Ibid.* So, the officials instructed Buriev to appear the next morning for processing at the U.S. Citizenship and Immigration Services ("USCIS") Office at St. Thomas, U.S. Virgin Islands. *See ibid.* But, the next day, Buriev never appeared. *See ibid.*

On November 16, 2024, immigration officials found Buriev at the Edward Wilmoth Blyden Marine Terminal at St. Thomas. *See* Delgado Decl. ¶ 5. Buriev told officials that he intended to live and work in the United States but had "never applied for a visa[.]" Record of Inadmissible Alien at 6. The CBP officer deemed Buriev "inadmissible to the United States" because, "at the time of [his] application for admission," Buriev was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document[,] a valid unexpired passport, or other suitable travel document, or document of identity or nationality[.]" *Ibid.* (cleaned up). Buriev was processed for expedited removal and—since he'd expressed fear of returning to Uzbekistan—referred to an asylum officer for a credible fear interview. *See* Delgado Decl. ¶¶ 6, 8. Buriev was detained by ICE on November 18, 2024. *See id.* ¶ 7.

The asylum officer later determined that Buriev had shown a credible fear of persecution. *See id.* ¶ 8. On February 22, 2025, the Department of Homeland Security ("DHS") issued a Notice to Appear, vacated Buriev's order of expedited removal, and initiated removal proceedings. *See* Notice to Appear [ECF No. 14-1] at 8. Buriev remains detained at Broward Transitional Center in Pompano Beach, Florida. *See* Enforce Alien Removal Module ("EARM") Docket [ECF No. 14-1] at 20.

On June 17, 2025, an immigration judge "ordered that Buriev be removed to Uzbekistan." June 18, 2025 Status Report [ECF No. 19] at 2. Although Buriev had until July 17, 2025, to appeal his

2

order of removal to the Board of Immigration Appeals ("BIA"), he never filed an appeal. *See* Order for Supplemental Briefing [ECF No. 20] at 1 ("After taking judicial notice of Buriev's immigration case, we find that Buriev never appealed his final order of removal[.]" (citation omitted)); August 13, 2025 Response [ECF No. 21] at 2 ("Any appeal by Buriev to the [BIA] was due by July 17, 2025, and Buriev did not timely file an appeal.").

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C § 2241(c)(3)). This provision allows persons to challenge the legality of their "immigration-related detention, including challenges to the validity of a deportation order[.]" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Cadet*, 377 F.3d at 1182 ("[T]he jurisdiction-stripping provisions of AEDPA and IIRIRA did not deprive federal courts jurisdiction to consider aliens' challenges to their removal orders raised in § 2241 habeas petitions." (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001))).

## ANALYSIS

Before we get to the Petition's merits, we'll address one threshold issue—which is that Buriev named the wrong Respondents. When a petitioner challenges his "present physical confinement," the Supreme Court has held that "the immediate custodian, not the supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Since Buriev is "currently detained at the Broward Transitional Center," the Respondents argue that Buriev's "immediate custodian is Juan F. Gonzalez, [the] Assistant Field Office Director" of that facility. Response at 1 n.1. In our Circuit, "courts may *sua sponte* order substitution for the proper respondent[,] as 'denial of a habeas petition for failure to name the proper respondent would give an unreasonably narrow reading to the habeas corpus statute.'" *Mayorga v. Meade*, 2024 WL 4298815, at *3 (S.D. Fla.

3

Sept. 26, 2024) (Bloom, J.) (quoting *Jackson v. Chatman*, 589 F. App'x 490, n.1 (11th Cir. 2014)). So, we'll **SUBSTITUTE** Juan F. Gonzalez as the correct Respondent and **DISMISS** the Warden of Broward Transitional Center and Miami Field Office Director Garrett Ripa as the improperly named Respondents.

With that out of the way, we now arrive at Buriev's Petition, from which we've liberally construed four grounds for habeas relief. *First*, Buriev claims that a CBP supervisor "retaliated" against him, thus violating Buriev's First Amendment rights, "because [Buriev's] in-law challenged [the CBP supervisor's] authority to deport" him. Petition at 7 (cleaned up). *Second*, Buriev asserts that this same CBP supervisor violated his Fourth Amendment rights by arresting him "without issuing a warrant." *Id.* at 6. *Third*, Buriev claims that the CBP supervisor "lacked any lawful authority to detain or arrest [him]" because (Buriev says) he had the "right to remain in the country without a status" as an "asylum seeker[.]" *Id.* at 7 (cleaned up). *Fourth*, Buriev believes that his arrest and detention violated his "due process [rights] under [the] Fifth Amendment." *Id.* at 8 (cleaned up). As we'll explain, Buriev fails on all four grounds.

**I. Ground One**

As his first ground, Buriev claims that a CBP official violated his First Amendment rights by retaliating against Buriev after his in-law "challenged [the official's] authority to deport" him. Petition at 7 (cleaned up). But this claim belongs in a civil-rights action and *not* in a habeas petition. That's because "[t]he *sole* purpose of habeas corpus proceedings is to test the validity or legality of the restraint of the petitioner." *Martin v. Spradley*, 341 F.2d 89, 90 (5th Cir. 1965) (emphasis added). Here, even if Buriev prevails on his retaliation claim, "the duration of his [confinement] will not be shortened by one moment." *McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir. 1982) (cleaned up); *see also Beasley v. Unnamed Respondent*, 2018 WL 10611667, at *2 (N.D. Ga. Dec. 12, 2018) ("A habeas remedy does not extend to matters that do not affect either the fact or duration of confinement."), *report and*

4

*recommendation adopted*, 2019 WL 8353314 (N.D. Ga. Jan. 10, 2019); *see, e.g.*, *Aloba v. FCC Coleman 1*, 2024 WL 4040591, at *2 (M.D. Fla. Sept. 4, 2024) (Jung, J.) ("Petitioner cannot bring a First Amendment Claim in a habeas proceeding."). Since Buriev's retaliation claim doesn't bear on the legality of his detention, it's not cognizable in habeas corpus. We therefore **DENY** Ground One.

### II. Ground Two

As his second ground, Buriev asserts that his detention is unlawful because CBP officials arrested him "without issuing a warrant," which (he says) violated his Fourth Amendment rights. Petition at 6. But Buriev strikes out on this ground, too. Again, "the only relief available on habeas corpus is immediate release or discharge from the custody complained of," *Simmons v. United States*, 437 F.2d 156, 157 (5th Cir. 1971), and courts have long recognized that an unlawful arrest, by itself, doesn't warrant release, *see, e.g.*, *Williams v. Sec'y, Dep't of Corr.*, 2019 WL 2717202, at *4 (M.D. Fla. June 28, 2019) (Jung, J.) ("[A] Fourth Amendment violation during arrest does not by itself warrant habeas relief." (citation omitted)); *Abraham v. Wainwright*, 407 F.2d 826, 828 (5th Cir. 1969) ("Even if, arguendo, [the petitioner's] arrest was illegal, that alone does not present grounds for habeas relief unless such arrest in some way deprived the petitioner of a fair trial."); *cf. U.S. ex rel. Bilokumsky v. Todd*, 263 U.S. 149, 158 (1923) ("A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." (cleaned up)). Since Buriev hasn't shown that his warrantless arrest makes his custody unlawful,[1] we **DENY** Ground Two.

---

[1] For instance, 8 U.S.C. § 1357(a)(2), requires that an alien arrested without a warrant "be taken without unnecessary delay before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States," 8 U.S.C. § 1357(a)(2), but Buriev doesn't argue that this provision was violated. All Buriev claims is that his arrest was constitutionally infirm because CBP officials "arrested [him] . . . without issuing a warrant," which, as we've noted, is not a thing. Petition at 7.

5

**III. Ground Three**

Next, Buriev claims that CBP officials "lacked any lawful authority" to arrest him because (Buriev says) he had the "right to remain in the country" as an "asylum seeker[.]" Petition at 7. Wrong again. In fact, it's precisely *because* Buriev sought asylum that his detention was lawful under immigration law. "If immigration officials determine that [an] alien is inadmissible because of certain misrepresentations or lack of proper documentation, the alien is to be removed without further hearing or review unless the alien indicates an intention to apply for asylum or a fear of persecution." *Florida v. United States*, 2022 WL 2431414, at *2 (N.D. Fla. May 4, 2022) (Wetherell, J.) (cleaned up). In such cases, an alien who enters the country intending to apply for asylum is referred "for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii). "If the officer determines at the time of the interview that [the] alien has a credible fear of persecution[,] the alien *shall be detained* for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii) (emphasis added). And this detention is *mandatory. See id.* § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause *shall* be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." (emphasis added)).

When Buriev applied for asylum upon his arrival at St. Thomas, U.S. Virgin Islands, on November 16, 2024, a CBP officer determined that Buriev "appear[ed] to be inadmissible to the United States" because, "at the time of [his] application for admission," Buriev was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [Immigration and Nationality] Act[.]" Record of Inadmissible Alien at 6. But, since Buriev also applied for asylum, he was referred for an interview to an officer who later determined that he "demonstrated a credible fear of persecution or torture." Notice to Appear [ECF No. 14-1] at 8. Because the CBP official was plainly authorized by statute to detain and arrest Buriev pending a final determination on his asylum application, his third ground fails. *See Dep't of Homeland*

6

*Sec. v. Thuraissigiam*, 591 U.S. 103, 118–19 (2020) (finding that the respondent could "not dispute that confinement during the pendency of expedited asylum review" was "lawful" where "he was apprehended in the very act of attempting to enter this country," was "inadmissible because he lack[ed] an entry document, . . . and [where], under these circumstances, his case qualifi[ed] for the expedited review process, including mandatory detention during his credible-fear review" (cleaned up)).[2] We thus **DENY** Ground Three.

### IV. Ground Four

Lastly, we've liberally construed two subclaims from Buriev's fourth ground. *First*, Buriev alleges that his procedural due process rights were violated because "the CBP Supervisor did not give [him] a Notice to Appear before an immigration court" upon his arrest. Petition at 8. *Second*, we find— though it's a stretch—that Buriev also claims that his pre-removal detention is violating his due-process rights. *See ibid.* (listing "Ground Four" as "Violation of Due Process under Fifth Amendment" and asking us to "release [him] from the detention facility"); *see generally* Response [ECF No. 14] (addressing the constitutionality of Buriev's pre-removal detention under 8 U.S.C. § 1225(b)).

#### A. *Subclaim One*

We're unpersuaded that Buriev's due-process rights were violated when immigration officials didn't initially hand him a Notice to Appear.[3] Ordinarily, "[r]emoval proceedings against an alien are

---

[2] Not only do these three grounds fail on their merits, but they also fail inasmuch as Buriev wants us to "punish those individuals . . . responsible for [his] arrest," "certify that [he] was a victim of . . . false imprisonment," and order the Respondent to "compensate [him] for the injuries [he] sustained from the false imprisonment and violation of [his] civil rights," Petition at 8, since these remedies are unavailable in habeas corpus, *see Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy." (cleaned up)); *Persinger v. Sec'y, Dep't of Corr.*, 2020 WL 7041803, at *1 (M.D. Fla. Nov. 19, 2020) (Jung, J.) ("[T]he only relief that can be gained in a habeas action is an immediate or speedier release from custody. Therefore, aside from release, injunctive or declaratory relief is unavailable in a habeas action." (cleaned up)).

[3] We probably lack jurisdiction to address this subclaim. Section 1252(b)(9) of Title 8 to the U.S. Code provides that "judicial review of all questions of law and fact, . . . arising from *any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section" and that "no court shall have jurisdiction, by habeas corpus

initiated by serving a notice to appear that specifies, among other things, '[t]he time and place at which the proceedings will be held.'" *Sopon-Mendoza v. U.S. Att'y Gen.*, 791 F. App'x 862, 865 (11th Cir. 2019) (quoting 8 U.S.C. § 1229(a)(1)). But, under 8 U.S.C. § 1225(b)(1)(A), "certain arriving aliens, including those who lack proper admission documents"—like Buriev—"are subject to expedited removal 'without further hearing or review.'" *Florida v. United States*, 660 F. Supp. 3d 1239, 1248 (N.D. Fla. 2023) (Wetherell, J.). So, Buriev's entry into expedited removal meant that an ordinary Notice to Appear wasn't necessary.[4] *See Maca v. U.S. Att'y Gen.*, 2015 WL 770410, at *4 (D. Nev. Feb. 24, 2015) ("An alien subject to expedited removal never receives a Notice to Appear."). What's more, Buriev *was* properly given a Notice to Appear once he formally entered removal proceedings on February 22, 2025. *See* Notice to Appear [ECF No. 14-1] at 8. In short, Buriev hasn't shown any denial of process based on the timing of his Notice of Appear, so we **DENY** Subclaim One.

    B. *Subclaim Two*

Buriev's second subclaim—that his prolonged pre-removal detention violates due process—is now moot. Buriev has already been "ordered removed to Uzbekistan" by an immigration judge, Status Report [ECF No. 19] at 2, and Buriev never appealed that order of removal to the BIA, *see* August 13, 2025 Response [ECF No. 21] at 2 ("Any appeal by Buriev to the [BIA] was due by July 17, 2025, and Buriev did not timely file an appeal."). Since Buriev hasn't appealed, the immigration judge's decision is now a final removal order. *See, e.g., De La Teja v. United States*, 321 F.3d 1357, 1362 (11th

---

under section 2241 of Title 28 or any other habeas corpus provision, . . . to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9) (emphasis added & cleaned up); *see also, e.g., Aguayo v. Martinez*, 2020 WL 2395638, at *7 (D. Co. May 12, 2020) (finding that the court lacked jurisdiction over the petitioner's claim "that his arrest was invalid because no notice to appear had been issued to him when he was arrested" since these "actions . . . 'were taken . . . to remove an alien' and thus unreviewable . . . under Section 1252(b)(9)" (cleaned up)). As we'll explain, however, even if we had jurisdiction over this subclaim, Buriev's argument fails on the merits.

[4] Apart from this, Buriev doesn't allege that the process he received during his expedited removal proceedings was insufficient, and the Eleventh Circuit has already held that "the expedited removal process does not violate an alien's due process rights." *Francis v. U.S. Att'y Gen.*, 603 F. App'x 908, 912–13 (11th Cir. 2015).

Cir. 2003) ("On October 10, 2002, an Immigration Judge found De La Teja removable as charged in a decision which became a final removal order when De La Teja did not appeal that decision to the Board of Immigration Appeals by November 12, 2002." (citing 8 C.F.R. § 241.1(c))).

Buriev is thus no longer being detained under 8 U.S.C. § 1225(b) but, rather, "pursuant to a wholly different statute[,] 8 U.S.C. § 1231(a), which controls the detention and removal of an alien subject to a final order of removal." *Id.* at 1363. And, because the Attorney General is no longer acting under § 1225(b), any opinion on the legality of Buriev's detention under that provision might be "purely advisory in nature, and therefore this issue has become moot." *Ibid.*; *see also, e.g.*, *Mohammad v. Creel*, 2014 WL 204426, at *2 (N.D. Fla. Jan. 17, 2014) (Hinkle, J.) ("Because Petitioner is no longer held under the pre-removal statute, § 1226(c), but is now detained pursuant to the removal statute, § 1231, a decision from this Court concerning the prior period of detention would not provide Petitioner the habeas relief he seeks because his detention during the time this case has been pending is authorized under § 1231.").

There are, it's true, two exceptions to the mootness doctrine, which apply *either* when (1) "collateral consequences" remain, *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); or (2) the injury is "capable of repetition yet evading review," *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). But Buriev cannot satisfy either exception. *One*, the collateral-consequences exception doesn't apply because nothing in this record shows—and Buriev hasn't identified[5]—any "disabilities or burdens which may flow" from the pre-removal detention Buriev is challenging. *Carafas*, 391 U.S. at 237. In fact, since Buriev is currently within the 90-day "removal period" following a final order of removal, his post-removal

---

[5] On August 11, 2025, we notified the parties of the potential mootness of Buriev's second subclaim and ordered the Respondent to file a supplemental brief on the issue. *See generally* Order for Supplemental Briefing [ECF No. 20]. In its Response, the Respondent argued that Buriev's Petition should be dismissed because his "claims regarding pre-removal detention are moot, and any claim regarding post-removal detention is premature[.]" August 13, 2025 Response [ECF No. 21] at 4. As of this Order, Buriev hasn't responded to that request. *See generally* Docket.

detention is now *mandatory*, so there's nothing we can do to stop it. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)). *Two*, the exception for actions that are capable of repetition yet evading review also doesn't apply to Buriev's case because "the controversy at issue"—namely, the legality of Buriev's pre-removal detention under § 1225(b)—"necessarily cannot arise again, as [Buriev] is now, and will be, subject to a final order of deportation." *De La Teja*, 321 F.3d at 1363 n.3. So, we **DENY as moot** Subclaim Two.

\*     \*     \*

We therefore **ORDER AND ADJUDGE** as follows:

1. Davronbek Buriev's Petition [ECF No. 1] is **DENIED on the merits** as to Grounds 1–3 and Subclaim One of Ground 4.

2. Subclaim Two of Ground 4 is **DENIED as moot**.

3. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**.

4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on September 26, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Davronbek Buriev, *pro se*